**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JEAN SCHLACHER, ALFRED SCHLACHER,          )
and TERI SCHLACHER,                                       )
                                                  )
             Plaintiffs,                                   )
                                                  )
      v.                                                       )
                                                  )
LAW OFFICES OF PHILLIP J. ROTCHE &           )
ASSOCIATES, P.C.,                                          )
                                                  )
             Defendant,                                   )

```
FILED: MAY 15, 2008
08CV2844           AEE
JUDGE SHADUR
MAGISTRATE JUDGE NOLAN
```

JURY TRIAL DEMANDED

**COMPLAINT**

**INTRODUCTION**

1.     Plaintiffs, Jean Schlacher ("Jean"), Alfred Schlacher ("Alfred") and Teri Schlacher ("Teri") collectively ("Plaintiffs") bring this action to secure redress against unlawful credit and collection practices engaged in by Defendant Law Offices of Phillip J. Rotche & Associates, P.C. ("Rotche") that violate multiple provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA").

2.     Rotche has subjected Plaintiffs Jean and Teri to an abusive collection practice that included belittling comments made to inflict emotional distress and to humiliate Jean into paying $14 dollars a month by the 15th of every month until her debt incurred for a root canal is paid off.   Rotche also impermissibly discussed Jean and Alfred's debt with multiple third parties.

3.     There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of

individual privacy. 15 U.S.C. § 1692(a).

## JURISDICTION AND VENUE

4.    This Court has jurisdiction under 28 U.S.C. §§1331, 1337, 15 U.S.C. §1692k (FDCPA).

5.    Venue and personal jurisdiction over Defendant in this District is proper because:

    a.    Plaintiffs reside in the District;

    b.    Rotche transacts business in the District and Rotche maintains an office within the district;

    c.    Rotche's collection activities through litigation, and the use of the telephone and mail occurred within the District.

## PARTIES

6.    Plaintiffs are individuals who reside in the Northern District of Illinois.

7.    Rotche is an Illinois Professional Corporation with its principal place of business located at 320 S. Westmore Ave., Lombard, IL 60148.  Its agent is Phillip J. Rotche.

8.    Rotche is engaged in the practice of filing suit on behalf of creditors against Illinois consumers on debts that are in default at the time of suit.

9.    Rotche is a debt collector as defined in 15 U.S.C. § 1692a(6) in regard to its conduct complained of herein.  *See also Heintz v. Jenkins*, 514 U.S. 291, 299 (1995).

## FACTS

10.    Rotche on behalf of Plaintiff Jean's dentist creditor filed suit in DuPage County, Illinois, 07 SC 2139, against Alfred and Jean after Jean was late on her 23rd payment towards paying off the costs of her root canal (the "state court suit").

11.    In the state court matter, judgment was entered for the dentist creditor requiring payments in the amount of $14.00 per month until the debt remaining in the amount of $282.34 plus court costs in the amount of $220.00 and judgment interest was paid off.  The payments were to begin of May 15, 2007 and were to be paid on the 15th of each month.

12.    Plaintiffs Jean and Alfred failed to make a timely payment by May 15, 2007, to Rotche.

13.    On May 17, 2007, an employee of Rotche, William G. Sligar ("Mr. Sligar"), contacted Jean by telephone.

14.    During the conversation Mr. Sligar:

a.    Asked Jean, "***Are you retarded***?" (emphasis added).

b.    Stated that by violating the state court order Jean was displaying "criminal" behavior.

c.    Shouted at Jean.

d.    Stated that Jean had played her, "little games in court" and now she was going to have to pay.

e.    In response to Jean's inquiry as to a penalty for a late payment he stated, "Why don't we just make it a surprise."

15.    Jean then called back to speak with Mr. Rotche, but when he was not available opted to speak with Mr. Sligar again.

16.    Jean believed from these May 17, 2007 conversations with Mr. Sligar that she would be jailed.

17.    Jean believed from these May 17, 2007 conversations with Mr. Sligar a warrant had already been issued for her arrest.

18.     Jean became so emotionally distraught after the May 17, 2007 phone conversations with Mr. Sligar that her daughter called Mr. Sligar to inquire about what exactly did he mean by a "surprise" and how could they stop the police from taking Jean to jail.

19.     Teri contacted Mr. Silgar and he informed her that the matter with Jean was none of her business he then he hung up on her.

20.     Mr. Silgar sung in a child's tattling voice that Teri's mom was going to jail.

21.     Mr. Silgar stated that Teri was also going to jail.

22.     Mr. Silgar told Teri that he was going to call the Lombard Police to file a complaint against her.  Mr. Silgar had no intention of actually calling the police to file a complaint for Teri's phone calls to him.

23.     Mr. Silgar recorded the phone conversation with Teri.  Teri did not know that Mr. Silgar was recording the conversation until he played back a portion of their conversation.  On information and belief Mr. Silgar also taped his conversations with Jean.

24.     In a letter dated May 22, 2007, on Rotche's letterhead, Mr. Sligar wrote Jean the following:

a.     "Each payment is DUE IN THIS OFFICE ON THE 15TH DAY OF EACH MONTH. *Is that clear enough for you*?" (emphasis added).

b.     "Be advised, if any, and I do mean any, future payment fails to reach THIS OFFICE by the 15th day of the month we will immediately notify the Court of your violation of the Order, and your attempt to sub-vert the Order by filing a false complaint against this office."

25.     In a letter dated May 30, 2007, a redacted copy is attached hereto as (Exhibit 1) on Rotche's letterhead, Mr. Sligar wrote Teri the following:

a.     "Exactly where did you get the idea that the police instructed me to stop calling your mother's home?"

b.     "I repeatedly hung up on you because you have no standing in this case, and your opinion doesn't matter"

c.     ". . . I can file criminal charges of telephone harassment against you at any time within 1 year from the date of your calls to this office."

d.     "And, while you are looking for someone to blame for **your inability to act and think as an adult**, lets not forget why the account was sent to this office." (emphasis added).

e.     "With regard to the $10.00 check, **are you cable of understanding** that we take our instruction from our client, not from the debtor."  (emphasis added).

f.     "**Why is that so hard for you, and people like you, to understand**?" (emphasis added).

g.     ". . . is actually a complement **coming from a person with your obvious social deficiencies.** But, as they say whatever helps you sleep at night." (emphasis added).

26.     Neither Jean nor Alfred gave Mr. Sligar or Rotche permission to send the May 30, 2007 letter to Teri nor did they give Mr. Sligar or Rotche permission to speak to Teri regarding their debt.

27.     In a letter dated May 22, 2007, on Rotche's letterhead, Mr. Sligar wrote Jean that, "[Teri] really has a vivid imagination."

28.    On information and belief, at some point after the May 2007 communications with Plaintiffs, Mr. Sligar drove past the home in which Jean lives.

29.    Within one year prior to the filing of this Complaint Mr. Sligar, on Rotche's letterhead and on behalf of Rotche, without Jean's or Alfred's permission communicated in writing with a third party, not any family member of Plaintiffs or Plaintiffs' creditor, regarding the debt in the state court suit.

30.    At all times relevant to this complaint, Mr. Sligar was an employee of Rotche acting within the scope of his employment with Rotche.

31.    Plaintiffs Jean and Teri have suffered humiliation, fear of criminal prosecution and emotional distress as a result of Mr. Sligar's conduct.  Jean has suffered physical illness as a result of Mr. Sligar's conduct.

## COUNT I – FDCPA § 1692d CLAIMS

32.    Plaintiffs incorporate paragraphs 1-31 above.

33.    This claim is made on behalf of Plaintiffs Jean and Terri.

34.    15 U.S.C § 1692d, in pertinent part, provides:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

* * *

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

35.    Rotche violated 15 U.S.C. §§ 1692d, d(2).

## COUNT II – FDCPA § 1692e CLAIMS

36.    Plaintiff incorporates paragraphs 1-31 above.

37.    This claim is made on behalf of Plaintiffs Jean and Terri.

38.    15 U.S.C § 1692e, in pertinent part, provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

* * *

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .

* * *

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

* * *

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

39.    Rotche violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(7) and 1692e(10).

### COUNT III – FDCPA § 1692c(b) CLAIM

40.    Plaintiff incorporates paragraphs 1-31 above.

41.    This claim is made on behalf of Plaintiffs Alfred and Jean.

42.    The FDCPA prohibits debt collectors from communicating with most third

parties.

43.     15 U.S.C. §1692c(b) provides:

(b) COMMUNICATION WITH THIRD PARTIES. Except as provided in section 804, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably  necessary to effectuate a postjudgment judicial remedy, a debt collector may  not communicate, in connection with the collection of any debt, with any person other than a consumer, his

attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

44.    Rotche violated 15 U.S.C. § 1692c(b).


## COUNT IV – FDCPA § 1692f

45.    Plaintiff incorporates paragraphs 1-31 above.

46.    This claim is made on behalf of Plaintiffs Jean and Terri.

47.    15 U.S.C. §1692f in pertinent part, states, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

48.    A person commits eavesdropping when he:

(1) Knowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or intercepts, retains, or transcribes electronic communication unless he does so (A) with the consent of all of the parties to such conversation or electronic communication . . . .

*People v. Coleman*, 227 Ill. 2d 426, 435, 882 N.E.2d 1025 (Ill. 2008) (*quoting* 720 ILCS 5/14-2 (West 2004)).

49.    Mr. Silgar committed eavesdropping as defined under Illinois law.

50.    Rotche can be held accountable for Mr. Silgar's actions if found to be a "Principal" as defined within the eavesdropping statute.

51.    Rotche violated 15 U.S.C. § 1692f .

**WHEREFORE**, Plaintiffs requests this Honorable Court to enter judgment in favor of Plaintiffs and against Defendant for:

(1)    Statutory damages;

(2)    Actual damages;

(3)    Attorney's fees, litigation expenses and costs of suit; and

(4)    Such other relief as the Court deems proper.

Respectfully submitted,

s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
Millennium Park Plaza
151 N. Michigan Ave. Ste. 3714
Chicago, Illinois 60601
(312) 238-9820 (TEL)

Colleen M. McLaughlin
Law Offices of Colleen M. McLaughlin
1751 S. Naperville Rd., Ste. 209
Wheaton, IL 60187
(630) 221-0305 (TEL)

Dmitry N. Feofanov
ChicagoLemonLaw.com, P.C.
404 Fourth Avenue West
Lyndon, IL  61261
(815) 986-7303 (TEL)

**JURY DEMAND**

Plaintiffs demand a trial by jury.

Respectfully submitted,

s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
Millennium Park Plaza
151 N. Michigan Ave. Ste. 3714
Chicago, Illinois 60601
(312) 238-9820 (TEL)

Colleen M. McLaughlin
Law Offices of Colleen M. McLaughlin
1751 S. Naperville Rd., Ste. 209
Wheaton, IL 60187
(630) 221-0305 (TEL)

Dmitry N. Feofanov
ChicagoLemonLaw.com, P.C.
404 Fourth Avenue West
Lyndon, IL  61261
(815) 986-7303 (TEL)

# EXHIBIT 1

Law Offices of
# Phillip J. Rotche & Associates, P.C.

320 S. Westmore
Lombard, IL 60148

**ATTORNEYS AT LAW**

Phillip J. Rotche

Telephone No. 630 916 6000
Facsimile No. 630 916 6888

**LEGAL ASSISTANTS**
William G. Sligar
Joshua D. Sligar

May 30, 2007

Teri Schlacher

     REDACTED

Dear Ms. Schlacher:

Exactly where did you get the idea that the police instructed me to stop calling your mother's home? No such instructions were issued, and the police officer did not have the authority to issue such an order. Furthermore, all phone records, ours and yours, will clearly indicate that we contacted your mother once on the day in question. All additional calls between your home and this office were initiated by your mother, and you. I repeatedly hung up on you because you have no standing in the case, and your opinion doesn't matter. You may not like being hung up on, but that's your problem, not mine, so deal with it. As for harassment, based on your admissions to the police officer, along with the phone records, I can file criminal charges of telephone harassment against you at any time within 1 year from the date of your calls to this office. Maybe you should have checked with your attorney before you made the calls.

Paragraphs one and two of my letter, dated May 22, 2007, are based on facts. We have the physical documentation some of which was supplied to this office, in writing, from your mother. Paragraph 3 of my letter, dated May 22, 2007, is a statement of intent on how we will proceed if there is any future violation of the Court Order. So, what is "factually false, and "legally unsound" about that letter? If you are going to put such libelous statements in print, then you better be able to back them up. And, while you are looking for someone to blame for your inability to act and think as an adult, lets not forget why the account was sent to this office. It certainly wasn't because it was being paid .

With regard to the $10.00 check, are you capable of understanding that we take our instruction from our client, not from the debtor? Checks are mailed back only when we are instructed to do so by our client. Lawsuits are filed only when we receive instructions from our client to do so. Why is that so hard for you, and people like you, to understand? Apparently you also do not understand that, when a person violates a Court Order, such as the one in question, we are required to notify the Court of the violation, even if it is only 1 day. As for the amount of the payment, when we consider that only $495.00 was paid during the past 6 years, that comes out to $8.39 per month, then the Court Ordered

payment of $14.00 per month is a victory, and it guarantees payment of the debt, plus all court costs, and statutory interest at 9% per annum, compounded monthly. As for your "sarcasm", do you actually think your comments or opinions have any validity or intelligent value as they apply to this matter? It is crystal clear that you have absolutely no respect for the Court, or it's Order. We have our facts in writing from your mother, and the Court.. Obviously, you can't get your facts straight. Under the circumstances our looking bad to you is meaningless. Your statement that I have a "personality problem" is actually a complement coming from a person with your obvious social deficiencies. But, as they say, whatever helps you sleep at night.


Sincerely,


William G. Sligar
Director of Financial Services